The District Court made two guidelines errors in Kevin Chapman's sentencing for being a felon in possession of a firearm. First, the District Court erred in increasing his base offense level for having a prior crime of violence. Second, the District Court erred in imposing a four-level enhancement for possession of a firearm in connection with another felony offense. First, because the issue here is mostly similar to the issue that was argued yesterday in Mr. McGee's case, I will focus on the plus-four for in possession with another felony offense. Under Iowa law, an individual is not guilty of carrying weapons violation if he or she goes armed with a dangerous weapon in the person's own dwelling or place of business or on land owned or possessed by the person. In cases of sentencing enhancements, if there is a statutory exception, as there is here, it is the government's burden to prove that that statutory exception does not apply. The government here failed to meet its burden to prove that this statutory exception does not apply. The record is incredibly limited on facts and what occurred during the conduct that was the basis for the four-level enhancements. The only facts we have are, in the PSR itself, it states that a confidential informant met with Mr. Chapman at an address and that Mr. Chapman walked out to the confidential informant's vehicle. There's also a brief questioning by the District Court. So that is in the objections to the PSR and the defense's position is that's not part of the record. It's in the response to the objections to the PSR and that's another fighting issue on this appeal and our position is that's not part of the record. This circuit's case law indicates . . . It may not be of an entry, but it's certainly part of the record. That's more accurate. That's correct. It's not something that the court can rely upon to impose the four-level enhancement. That's just a manner of the way the Southern District handles these objections to the PSR. The government attempts to rely upon the addendum to the PSR where the probation officer just kind of provides a narrative about why they think that the objection is incorrect. But this circuit's case law indicates that when a defense attorney or any attorney makes an objection to a factual assertion that would support a sentencing enhancement, what that does is that puts the government on notice as to what it must prove at the actual sentencing hearing. To find that a probation officer's response to an objection somehow means that the government doesn't have a burden to do anything at the hearing to put on evidence that's subject to cross-examination, just is not consistent with the case law. And practically, it would just bog down the district court's time because then it could just create this back and forth between defense counsel and probation where they're just filing responses to each other if the government's position is correct that defense counsel has to keep objecting every time a probation officer files a response to an objection. But regardless, the case law is clear that that's not how it works. The government must put forward evidence to prove what is objected to at sentencing. And here, the government simply failed to do that. But even if this court were to consider this response, it still is kind of vague. There's references to a multifamily dwelling, that it might be a duplex. And I think even what the probation officer says is, still may not provide. It's just kind of the probation officer rambling and not really providing concrete facts. If it's outside the, curtilage for lack of a better word, of his apartment, then it's Walker. The record isn't clear on that. And there is support in- Isn't clear on what? I know you're saying that it isn't clear about the parking lot. But if it is the parking lot of a multifamily residence, then I think Walker applies. What case would say Walker, I mean, what Iowa case would say that we're still in the home? The cases we relied upon in the brief are the pay and booth cases. And those deal with, granted, it's a little bit different. It deals with public intoxication. But those cases involve questions of, is someone in the public? And those cases take a property rights approach, which is similar to the language in the statutory exception of carrying weapons. And while Davidson, the case that the government relies upon, dealt with an apartment building and being in a common area of an apartment building, an individual who lives in an apartment building doesn't have the authority to prevent the general public from coming in. Our position is that a duplex, what I believe is what this was, is more akin to a single family home. And later Iowa case law on public intoxication indicates that that would be an individual's property rights. That wouldn't be an area open to the public, unlike in Davidson. But simply, the record is vague and it's difficult to even make a determination, even under the preponderance of the evidence standard, that that doesn't fall within the carrying weapons exception. And that it wasn't Mr. Chapman's own residence dwelling or... The statute says, own dwelling or land possessed by the person. Well, a dwelling isn't, that's a much narrower term than the curtilage concept in constitutional property law, right? It seems to me, so you can't, it's hard to me to see that a multi-family park, you know, complex parking lot is part of any one unit's dwelling. Well, it doesn't seem to me... Well, I haven't read your public intoxication cases, but they don't sound like they address the point. Well, it's also really vague as to what that parking lot even is. Is it a massive parking lot? Is it just, is there just two duplexes and it's a smaller parking lot? We don't know. Back to the government's arguable procedural error. What was the testimony, if any, at the sentencing? The only testimony came from questioning by the district court to the probation officer. And that questioning was, did Mr. Chapman report this as his residence? No. Okay. And that was, I'm summarizing, but it really was quite short questioning. And that was the extent of the evidence put on by the government or by anyone on this point. The government didn't call any other witness to try and disprove that the statutory exception did not apply. Um, and it wasn't... What is, I'm looking now at the objections. I haven't, I should have said this before, I guess. What objection number is, is the one that, that you are relying on as preserving this or imposing on the government the factual burden? I don't have the actual number in front, right in front of me, Your Honor. I can find it and bring it up on rebuttal. You know, that comes up often, whether you're object, whether you objected to the fact paragraph or just the conclusion paragraph. Is that, in your view, clear here? So it is, I don't think there was an objection to the factual paragraph, but I don't think that's necessary because it doesn't really say anything. It just, it's a very short factual paragraph on offense conduct. All it says is that, and I have it right in front of me, the factual paragraph, that the confidential informant met with Mr. Chapman at a residence, and it states the address in Des Moines, Iowa. Chapman walked out to the confidential informant's vehicle and they, there was an exchange of the firearm. And then Mr. Chapman went back in the residence. Paragraph number seven, Your Honor. And so that doesn't answer the question of, did he live here? Where did he walk out to? Was it a private driveway? Was it on his land? And the objection put the government on notice that they were asserting that it was his land. And because the case law is clear that the government has the burden to prove that that statutory exception doesn't apply, that they had the burden to do that at the hearing and simply failed to do so. I see I'm cutting into my rebuttal time. Unless there are immediate questions, I would reserve the remainder of my time. Very well. Good morning. Good morning. You may proceed. Thank you. May it please the court. Counsel. This situation is a little bit unusual in the sense that the defendant, when he objects, when Mr. Chapman objected saying, hey, I was on my property when I had this gun. At that point, the probation officer did some more investigation. And in the addendum to the report, the probation officer reported, when we interviewed the defendant in preparation for the PSR, his PSR interview, Mr. Chapman told us that he was in flux between two different residences. He says that that probation officer's additional investigation is sufficient evidence of sentencing. I thought our case law was pretty clear. You can't just rely on the, just like you can't rely on the PSR, you can't rely on the probation. Well, this was information that the probation officer developed after he interviewed the defendant. And the court can rely on that. What 8th Circuit case says that that is a legitimate part of the sentencing record? The 8th Circuit cases are cited in our brief that talk about how the judge can rely on any information that has a reasonable indicia of reliability. Here, this is information developed by the US Probation Office. This is an agency, an arm of the court that's trained to investigate facts. And he also stated at the sentencing hearing, the judge says, did we ever, and that's the one thing that's the most important fact here. At the time he committed this offense, Mr. Chapman was already on federal supervised release for another gun offense. So he was reporting to the probation office. He was required to tell them where he lived. And as the probation office indicates in the objection, when they're replying to the objection, he never reported to us at any time that he was living on McKinley Avenue. He never told us, his last known address was on Chaffee Road. Do you concede that he did, the defendant did challenge the fact of his residence? Did he put the issue of his residence in issue before the court? Well, that's questionable too. When you get to the transcript of the- By saying, as Ms. Quick argues, basically, well, she argues that he did. And that once he raised the defense of the exception, if you want to put it that way, it was your duty to offer some admissible evidence to satisfy the court that the exception did not apply. Well, the court satisfied itself when it contacted, or when it asked the probation officer at the sentencing hearing, do we ever have him living at that residence? And the probation officer says, no, I've looked through every text I've received from him. This is the officer who's his supervisory probation officer, who's supervising him on his supervised release. And he- Then, well, was it then, did you, as Ms. Quick said, then you get into this back and forth. Was he, was the Chapman then required to dispute what the probation officer said to the district court? Well, not in this case. Because when you look at Mr. Chapman's own statements to probation at the PSR interview, he tells a very fishy story. He says, hey, I was in between two different residences at the time of this offense. I was in Flux. One was on Phillips Street. The other one was on McKinley behind the post office. Well, when the probation officer goes to investigate these statements, he determines that the only residence behind the post office is the Elmcrest or Elmhurst Apartments on Phillips. And he then further investigates that the McKinley address is three-tenths of a mile away from the post office. So it's the defendant's own statements that are inconsistent. And I think that the district court could certainly rely on the defendant's own statements to the probation officer in the PSR interview. And at that point, the defendant or Mr. Chapman made no objections saying, hey, I didn't mean that. Or I didn't tell the probation officer that. For most of my 27 years on this court, we have been lecturing the government that facts in the PSR are not sufficient to prove a factually disputed issue at sentencing. I believe some of our cases have been a back and forth with the probation officer at a sentencing hearing. It does not satisfy the government's burden to prove the factual posture. Now, I've read your summary of the three cases cited on pages 10 and 11, and none of them appear to be reliance on an exchange with the probation officer before or after sentencing. Is there such a case? I do not- This reliable evidence is back and forth with the probation officer at our amended PSR, not testimony under oath subject to cross-examination at the sentencing hearing. First of all, the defense attorney in Chapman did not ever even seek to cross-examine the probation officer. They just went ahead into- I don't understand, given the relationships. Now, how about an answer to my question? Yes, Your Honor. I did not see any cases in my research that talked about the probation officer's statements to the court at sentencing. So I would agree that the cases that I cited- Is the case interpreting our rigorous requirements as the case of first impression? How about another circuit? What do other circuits do with this issue? I do not know at this time, Your Honor. But what the cases that the government cites do say is that the district court can rely on evidence, while it may not be admissible on an evidentiary basis, can certainly be relied upon if it has the indicia of reliability. And it's the government's position that when a U.S. probation officer conducts an investigation based in investigating the defendant's own statements, that that is sufficient reliability. And I'd like to also mention the transcript at sentencing because it was sort of wishy-washy about whether Mr. Chapman was still really arguing that he was living or not where he was living. Because when the judge asked counsel, this is on page two, did you find factual errors in the report? Counsel stated just a slight one, Your Honor. On the issue of whether or not, on the issue in connection with another felony, we've suggested to the court the broad definition of dwelling under state law. That the spot where the offense conduct occurred was his temporary residence. And it's alluded to in the PSR, so I'm not sure it's really an issue. But we're going to allege where it occurred was where he was staying for at least a night or two. And at that point, the district court says, Mr. Richie, who's the supervisory probation officer, were you aware that that was a potential residence for Mr. Chapman? And the probation officer stated, no, I've never had any home contact there. I looked through all of my notes, as well as text messages from Mr. Chapman. On these facts, the government was not required to parade witnesses in front of the district court. Based on the supervisory, this is a very different situation. If Mr- That's the question. Pardon me? You just said on the basis of these facts. Well, that's the question, whether they are facts of record under our case law. Let me ask this. Does the record reflect whether the probation officer who answered these questions of sentencing was the officer to whom Chapman was regularly required to report under supervised release? Yes, Your Honor, he was. On page three of the transcript, the district court said, Mr. Richie, you're his supervising probation officer, correct? And the probation officer replies, correct. So he was the individual who was working with Mr. Chapman while on supervised release. And in this, now, if Mr. Chapman had not been on supervised- He was not put under oath, but the defendant didn't raise that issue. Correct. If Mr. Chapman were not on supervised release, and we had this scenario, I think the government would have a much tougher argument. But because he was already under supervision and had been reporting where he was living, and this address had never popped up and had never been argued by him as a resident, then I think in this, under the circumstances of this case, the government was not required to have put on evidence regarding his residence. I see my time is up unless the court has other questions. Apparently not. Thank you for your- Thank you. So to first follow up on a question about what the actual objections were, an objection to, there actually was an objection to the factual paragraph. Defense counsel references paragraph seven, which discusses the offense conduct, and objects to it, asserting that this was his private property. So there is an objection to the factual summary, and there's also an objection, and that is objection number four, that objects to the actual guideline paragraph where the PSR states that it is imposing the four-level enhancement. As to this issue of defense counsel's statement at sentencing, all that indicates is the defense counsel is unsure of what the government's position is. The defense counsel and a defense attorney doesn't tell the government how to prove its own case. The defense counsel, again, repeated its position that this did not, this occurred on private property, and it fell within the exception. So that's not any kind of waiver or any kind of issue on that either. Well, back to Judge Logan's observation that our court over the years has been very, I think, quite strict about requiring more than mere allegations of responsibility. In other words, in this case, how much would have been enough? Now, you're going to say the extreme would be bring a plot of the property, get the property records, tax returns, something. Does it have to be approved with mathematical certainty or to plausible believability, for want of a better term? It doesn't take much, and I would acknowledge that. We are only dealing with the preponderance of the evidence standard as for these enhancements. Maybe that's the best, I mean, right, okay. The problem here is that there's just nothing. Does our case law, and apparently it does, I can't come up with the name of the case, does our case law clearly prohibit reliance upon a probation officer's statement that is not made under oath? I don't know that. I'm not familiar with those cases off the top of my head. Let's see, I don't have the sentencing transcript before me. The probation officer was obviously in the courtroom. Yes, that's fairly soon. It was sort of a casual, well, I shouldn't say casually. Obviously, the officer responded to the district court's question. Right. You know what was said. The question is, to the extent that our cases may have gone too strict a line there, to the extent that we can do it without running afoul of our precedent, should we adopt a more, well, you would say no, don't relax the standards that you've imposed in the past, but maybe there's some case law from the other circuit. It seemed to me I read one several weeks ago, and I was going to put it in the file. I suppose I've lost it, but anyway. No, our- My speech for the morning, but again, to put you on the spot, and I know you don't have to say that we'll require X, Y, and Z, but for hypothetical purposes, had the probation officer been placed under oath, you could still make the argument, I suppose, on lack of fair warning or something like that. If that they had actually called the probation officer to testify. I think that would be fair for the government to do. The government was put on notice that it needed to call witnesses, and defense counsel was aware that this was going to be an issue at sentencing, but- Well, your argument is, why should we give the government the benefit of the doubt in terms of latitude as to the proof that they haven't put in? Exactly. And our position also that this back and forth exchange, which is incredibly limited, really doesn't mean a whole lot. The fact that he did not indicate to his probation officer that he lived there, while causing problems for a supervised release, doesn't prove that he did not live there. A gratuitous comment, but would you say that however we come out on this, it's highly unlikely that we'll see another case in this particular U.S. Attorney's Office that will permit this type of issue to be raised? As far as failing to put on evidence? Right. I would hope that we don't see this again. Well, we thank you for your argument. Thank you. Case is under submission, or it has been submitted and we will take it under consideration.